IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 22-0199

_____

FILED
**April 4, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE B.V., W.V.-1, L.V., N.R., E.O.-R., E.R., AND S.V.

_____

AND

_____

No. 22-0206

_____

IN RE B.V., W.V.-1, L.V., N.R., E.O.-R., E.R., AND S.V.

_____

Appeals from the Circuit Court of McDowell County
The Honorable Edward J. Kornish, Judge
Case Nos. 21-JA-24, 21-JA-25, 21-JA-26, 21-JA-27, 21-JA-28,
21-JA-29, 21-JA-30

AFFIRMED, IN PART, VACATED, IN PART,
and REMANDED WITH INSTRUCTIONS

_____

Submitted: January 10, 2023
Filed: April 4, 2023

Dana F. Eddy, Esq.
Public Defender Services
Charleston, West Virginia
Counsel for Petitioner Mother


Thomas H. Evans, III, Esq.
THOMAS HANNA EVANS, PLLC
Oceana, West Virginia
Counsel for Petitioner Father

Patrick Morrisey, Esq.
Attorney General
Brittany Ryers-Hindbaugh, Esq.
Assistant Attorney General
Charleston, West Virginia
Petitioner for Respondent DHHR


R. Keith Flinchum, Esq.
Law Office of R. Keith Flinchum
Princeton, West Virginia
Guardian ad Litem

JUSTICE WOOTON delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected.  These findings shall not be set aside by a reviewing court unless clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)."  Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

2.     "For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an 'abused child' or a 'neglected child' as those terms are defined in West Virginia Code § 49-1-201 (2018).  Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition."  Syl. Pt. 8, *In re C.S. and B.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022).

i

3.      The mere fact that a child is in a legal guardianship at the time an abuse and neglect petition is filed does not preclude a circuit court from exercising subject matter jurisdiction in adjudicating whatever rights a respondent to that petition may still have to that child, provided that the child meets the definition of an "abused child" or "neglected child" as defined in West Virginia Code § 49-1-201 (2018) so as to confer that jurisdiction.  To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition.  Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named.


4.      "Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability."  Syl. Pt. 2, *W. Va. Dept. of Health and Hum. Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996).

WOOTON, Justice:

This consolidated opinion stems from separate appeals filed by Petitioner Mother M.O.-R.[1] and Petitioner Father W.V.-2 (collectively "Petitioners" or "the parents") challenging the order of the Circuit Court of McDowell County that terminated their parental, custodial, and guardianship rights to seven children: B.V., W.V.-1, L.V., N.R., E.O.-R., E.R., and S.V. (collectively "the children").[2] Three of the children resided in the home at the time the abuse and neglect petition was filed, but the other four children were in legal guardianships with various relatives. In addition to addressing Petitioners' specific arguments on appeal, we requested supplemental briefing on the question of whether this Court's holding in *In re C.S. and B.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022),[3] precluded the circuit court's exercise of subject matter jurisdiction over the children in legal guardianships.

---

[1] Consistent with our practice in cases involving sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015).

[2] Petitioners share only one biological child: S.V. Petitioner Mother is the biological mother of N.R., E.O.-R., and E.R., while Petitioner Father is the biological father of B.V., W.V.-1, and L.V. The other biological parents of the children are nonoffending and are not parties to this appeal.

[3] In brief, *In re C.S.* held that a circuit court may only exercise subject matter jurisdiction over a child in an abuse and neglect proceeding where the court has found said child to be an "abused child" or "neglected child" as defined in the West Virginia Code section 49-1-201. 247 W. Va. at ---, 875 S.E.2d at 353, syl. pt. 8. In that case, we concluded that one of the children involved did not meet either of these definitions, in part due to her having been placed in a legal guardianship several years prior to the initiation of the proceedings. *Id*. at ---, 875 S.E.2d at 362.

1

Because we find ample support for the termination of Petitioners' parental rights as to those children who resided in the home, we affirm the circuit court's dispositional order in that regard. However, because we find that the circuit court failed to make adequate findings to support its exercise of jurisdiction over the children in legal guardianships, we vacate that portion of the adjudicatory and dispositional orders culminating in the termination of Petitioners' parental rights to those four children and remand this matter to the circuit court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before delving into the facts underlying this abuse and neglect petition it should be noted that the parents have had several interactions with Child Protective Services ("CPS") and the West Virginia Department of Health and Human Resources ("DHHR") over the years. In the course of those interactions four of Petitioners' seven children were placed in permanent legal guardianships with relatives prior to the initiation of the instant abuse and neglect proceedings. Specifically, B.V. and L.V. were placed with maternal grandmother, T.K.; W.V.-1 was placed with paternal grandmother, T.M.; and E.O.-R. was placed with paternal grandmother, B.S. Under the terms of these guardianships the legal guardians were vested with discretion to control any visitation the children had with the parents, and we can glean from the record that the two eldest children, B.V. and W.V.-1, had some contact with the parents, though it is not clear to what extent.

Turning to the instant abuse and neglect petition, CPS received a report on May 8, 2021, that the child E.R., who resided with Petitioners, was suspected to have been physically abused. The child's grandparents observed bruising on the majority of his body and, at the advice of a McDowell County sheriff's deputy, took the child to Welch Community Hospital for a medical examination. The exam revealed that the child also suffered from a fractured nasal bone, and the treating physician opined that the injuries could not have been sustained accidentally.[4]

Following the medical exam, three of the children, E.R., N.R., and B.V., were forensically interviewed at Stop the Hurt Child Advocacy Center ("CAC"). These interviews were admitted without objection into evidence before the circuit court at the adjudicatory hearings, and the record indicates they were reviewed in camera. In his interview E.R. disclosed that Petitioner Father beat and choked him. E.R. explained that some of the current bruising resulted from an incident in which E.R. tried to choke his little sister, S.V., and that Petitioner Father choked him so he "would know how it felt." The child further revealed that Petitioner Father broke his nose by slamming a car door into it, and that Petitioner Father regularly twisted his nipples and genitals in a so-called "cow bite" to make him shout. At a subsequent interview, E.R. confirmed an allegation from a different child that Petitioner Father regularly took him to an outbuilding near the family's

---

[4] E.R. was brought to the hospital by a different grandparent days later for a follow-up exam and reported that the child experienced pain while urinating. A subsequent exam revealed extensive bruising to his genitals.

home, but did not disclose what occurred in that building, simply noting that it "wasn't a good place."

CAC also interviewed N.R., who also resided with Petitioners, and confirmed that Petitioner Father beat and choked E.R. after the child allegedly tried to choke S.V. She stated that she witnessed the incident, as well as other incidents in which Petitioner Father caused injury to E.R. She further disclosed witnessing Petitioner Father beat Petitioner Mother and threaten to kill her, as well as an incident in which Petitioner Father held a gun to S.V.'s stomach and threatened to kill her if she did not stop crying. As noted above, N.R. disclosed that Petitioner Father regularly took E.R. to an outbuilding to "punish him."

CAC also interviewed the oldest child, B.V., who did not reside in the home with the parents and the children N.R., E.R., and S.V. In her interview B.V. disclosed that Petitioner Father had hit her, and that she had witnessed him hit Petitioner Mother and threaten to kill her. Further, she disclosed an incident in which Petitioner Father allegedly overdosed on methamphetamine in the family home, although the record is unclear as to whether B.V. was present for this incident.[5] For reasons that are unclear to this Court, the DHHR never pursued adjudication or disposition on these specific disclosures with regard

_____

[5] Subsequent testimony at one of the adjudicatory hearings indicates that B.V. may have learned of this incident from her grandmother, T.M., rather than witnessing it firsthand.

to B.V. despite their having been admitted into evidence.  Further, the circuit court did not make any individual determinations as to this child at Petitioners' adjudication and disposition.

Following these interviews the DHHR filed an abuse and neglect petition on May 14, 2021, alleging that Petitioner Father physically abused E.R., engaged in domestic violence, and engaged in substance abuse.  The petition further alleged that Petitioner Mother failed to protect the children from the abuse.[6]  The DHHR later filed an amended petition in which it added W.V.-1's guardian, T.M., as a potential offending party because she allegedly facilitated contact between the child and Petitioner Father.  However, T.M. was never adjudicated on this allegation and was later determined to be nonoffending.

The circuit court held multiple adjudicatory hearings from June 23, 2021, to October 26, 2021, during which it heard testimony from the investigating CPS worker and from the CAC director regarding the children's forensic interviews.  The court also heard testimony from a McDowell County Sheriff's Deputy and the emergency room treating physician regarding E.R.'s injuries on the night of the medical examination.  The parents declined to testify at the adjudicatory proceedings, citing their pending parallel criminal

---

[6] We note that the B.V. and N.R. each stated in their forensic interviews that they recalled Petitioner Mother attempting to leave Petitioner Father on two occasions.  Once, Petitioner Mother locked Petitioner Father out of the home.  On another occasion, she packed bags for herself and the children with the intention of leaving.  Neither attempt was successful.

proceedings as the basis for that refusal. Ultimately the court issued an adjudicatory order dated November 24, 2021, finding that Petitioner Father physically abused E.R., that there was domestic violence in the home, and that Petitioner Mother failed to protect the children from that domestic violence. The court thereafter adjudicated Petitioner Father as an abusing parent and Petitioner Mother as a neglectful parent.

Significantly, the parents never moved the circuit court for an improvement period. Moreover, to the extent the DHHR attempted to provide services in the form of parenting classes, drug screens and supervised visitation, the parents were extremely uncooperative. Initially they refused to supply the DHHR with any contact information, then relocated from McDowell County, West Virginia, to somewhere near Martinsburg in Berkeley County, West Virginia, without providing an address. The McDowell County DHHR attempted to communicate with the Berkeley County DHHR office to facilitate the provision of services, but that effort was largely unsuccessful, consisting solely of a series of intermittent drug screen reports.

The matter proceeded to disposition over the course of two hearings held on December 2, 2021, and January 26, 2022. At this time, the circuit court reiterated its findings that Petitioner Father physically abused E.R. and that Petitioner Mother failed to protect the children from domestic violence. The parents again elected not to testify on

6

their own behalf.[7]  Thereafter the circuit court found that the parents failed to acknowledge any responsibility for their abusive and neglectful conduct, resulting in a conclusion that the conditions of abuse and neglect could not be rectified.  The court further concluded there was no reasonable likelihood the conditions of abuse and neglect could be corrected in the foreseeable future, and terminated Petitioners' parental, custodial, and guardianship rights to all seven children by order dated February 14, 2022.

Petitioners filed separate appeals of that order raising legally distinct arguments.  In this Court's October 20, 2022, scheduling order, we ordered the parties to submit simultaneous supplemental briefing to address whether this Court's decision in *In re C.S.* precluded the circuit court from exercising subject matter jurisdiction over the children who were in legal guardianships prior to the filing of the abuse and neglect petition.[8]

## II.  STANDARD OF REVIEW

This Court has long held that our standard of review in abuse and neglect matters is as follows:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse

---

[7] The record indicates that the parents declined to testify because their respective counsel in the parallel criminal matters resulting from the same abusive conduct advised them not to testify in the civil abuse and neglect proceeding.

[8] All parties, save Petitioner Father, submitted the requested briefing and this matter proceeded to argument on January 10, 2023.

and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). With this standard in mind, we now proceed to address the parties' arguments on appeal.

## III. DISCUSSION

As noted above, Petitioners filed separate appeals with legally distinct arguments. Petitioner Mother argues that the circuit court erred in finding that she failed to protect the children when there was "uncontroverted evidence" she took steps to protect them. She also argues that the court erred in finding that the DHHR was relieved of its duty to make reasonable efforts to preserve the family in this matter. Petitioner Father argues that the court erred in adjudicating him as an abusing parent, contending that the adjudication was not necessary to protect the welfare of the children, and further contending that he could have properly parented the children if given the proper tools. He also argues that the court erred in relying on his failure to acknowledge the conditions of abuse and neglect as a basis for termination because his pending criminal charges

8

"prevented [him] from testifying or acknowledging the alleged abuse." We address each of these arguments in turn below.

## A.    Jurisdiction

Before we can properly consider Petitioners' legal arguments as to termination, we must address a separate matter. As noted above, in addition to Petitioners' arguments, this Court ordered supplemental briefing on the question of whether this Court's decision in *In re C.S.*, 247 W. Va. at 212, 875 S.E.2d at 350, deprived the circuit court of jurisdiction over the four children in legal guardianships at the time the instant abuse and neglect proceedings began, thus presenting a question of subject matter jurisdiction which must be resolved prior to consideration of the terminations of parental rights.

In the requested supplemental briefing, the DHHR and guardian ad litem ("GAL") each argued that *In re C.S.* has no impact on the terminations at issue here, while Petitioner Mother argued that *In re C.S.* fully precludes circuit courts from exercising subject matter jurisdiction over *any* child in a legal guardianship prior to the initiation of the abuse and neglect proceedings. Neither of these positions is correct.

*In re C.S.* centered on a mother's appeal of the termination of her parental rights to two children arising from her substance abuse. 247 W. Va. at ---, 875 S.E.2d at 354. One child, C.S., resided in the mother's home. *Id*. The other child, B.S., had been in

9

a permanent legal guardianship with third parties for five years at the time the abuse and neglect petition was filed. *Id.* On appeal to this Court the mother argued that the circuit court erroneously exercised jurisdiction over B.S. because the child was not in her care when the abuse and neglect petition was filed. *Id.* at ---, 875 S.E.2d at 360-61. We agreed, based upon our conclusion that B.S. did not qualify as an abused or neglected child under the definitions set forth in the West Virginia Code.[9] In reaching this decision, we held:

> For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an "abused child" or a "neglected child" as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an "abused child" or a "neglected child" must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.

*Id.* at ---, 875 S.E.2d at 353, syl. pt. 8.

In applying that holding to the facts of the case, we explained that B.S. did not qualify as an abused or neglected child because her

> health and welfare were not harmed or threatened by the [mother's] drug addiction, and there is no evidence that any

---

[9] West Virginia Code § 49-1-201 states, in relevant part, that an "abused child" is a child "whose health or welfare is being harmed or threatened by: . . . [a] parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." The same Code section explains, in relevant part, that a "neglected child" is a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means[.]" *Id.*

person inflicted abuse or neglect upon B.S. or upon another child in the home where B.S. was living. It is undisputed that [the legal guardians] are non-abusing guardians. Critically, the [mother] did not have custody of B.S. and could not have simply gone to the guardians' home to retrieve B.S. any time she wished. To obtain custody of B.S., the [mother] would have to file a petition to terminate the legal guardianship. . . and a court would have to grant that petition.

*Id*. at ---, 875 S.E.2d at 362; *see also In re C.T.-1*, No. 22-0047, 2022 WL 3960166 (W.Va. Aug. 31, 2022) (memorandum decision) (finding that a child who had been in a guardianship with a relative for eleven years at the time the abuse and neglect petition was filed did not qualify as an abused or neglected child).

Here, Petitioner Mother contends that in all circumstances *In re C.S.* precludes a circuit court from exercising subject matter jurisdiction over a child in a legal guardianship prior to the filing of the abuse and neglect petition. Simply put, that is an incorrect reading of this Court's opinion. To the extent that the DHHR and the GAL argue that *In re C.S.* has no impact on the circuit court's exercise of jurisdiction, they likewise misread the opinion. With respect to a child in a legal guardianship at the time an abuse and neglect petition is filed, *In re C.S.* stands for the proposition that a circuit court must make factual findings that said child is an "abused child" or "neglected child," as defined in West Virginia Code section 49-1-201, in order to exercise jurisdiction over the child. 247 W. Va. at ---, 875 S.E.2d at 353, syl. pt. 8.

Lest there be further confusion regarding *In re C.S.*, while we would observe that the mother's lack of custody over B.S. was a predominant factor in the decision, we wish to make clear that nothing in *In re C.S.* forecloses a circuit court from finding that a parent's conduct has threatened the child's health or welfare such that the child may properly be deemed an abused or neglected child, as that term is defined by section 49-1-201, even though the parent does not have legal custody of their child. Without venturing into hypotheticals, we can envision countless factual scenarios wherein a child in a guardianship could be directly threatened by their parent's conduct, so as to render the child an abused or neglected child. The mere fact that a child is in a legal guardianship at the time an abuse and neglect petition is filed does not preclude a circuit court from exercising subject matter jurisdiction in adjudicating whatever rights a respondent to that petition may still have to that child, provided that the child meets the definition of an "abused child" or "neglected child" as defined in West Virginia Code § 49-1-201 (2018) so as to confer that jurisdiction. To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named.

Such a finding was not possible in *In re C.S.* because the abuse and neglect petition only pertained to the mother's drug abuse and its impact on C.S, the child in her

12

home. 247 W. Va. at ---, 875 S.E.2d at 354. The child in the guardianship, B.S., had been out of the mother's home for five years and the petition only mentioned the child in a perfunctory fashion. *Id*. at ---, 875 S.E.2d at 354-55. It was not clear from the record whether the mother had *any* contact with B.S. during the time period in which she was suffering from substance abuse problems. *Id*. The same was true in *In re C.T.-1,* as the allegations in the petition were specific to the child who resided in the home, C.T.-2, and there was no indication that the mother's conduct impacted C.T.-1—the child who had been in a guardianship for eleven years. *See* 2022 WL 3960166 at *5.

The case at bar differs from those mentioned above. The original abuse and neglect petition included allegations of domestic violence and drug abuse predicated at least partially on disclosures from B.V., a child who was indisputably in a legal guardianship at the time the petition was filed. At a minimum, these facts suggest the possibility that B.V. may have been directly exposed to the conditions of abuse and neglect created by the parents, despite having been in a guardianship with a non-offending guardian during the relevant time frame. Moreover, the amended petition added a different legal guardian, T.M., as an offending party[10] based upon allegations that she permitted W.V.-1 to have unfettered contact with Petitioner Father and refused to acknowledge that the parents engaged in abusive and neglectful behaviors. The GAL's report lends some credence to that assertion, insofar as he noted his concern that W.V.-1 was exposed to

---

[10] T.M. was ultimately not adjudicated as an abusing or neglectful guardian.

13

ongoing problems in the home as a result of this unrestricted contact.[11]  Thus, at least as to B.V. and W.V.-1, there remains an open question as to whether the parents' abusive and neglectful conduct threatened their health and welfare such that they would qualify as abused or neglected children even while in legal guardianships.

The circuit court's decision in this matter was rendered prior to our decision in *In re C.S.*, so the court may not have been aware of the questions posed by the existing legal guardianships and should not be faulted for failing to make the required jurisdictional findings.  We are mindful that "[u]njustified procedural delays wreak havoc on a child's development, stability and security."  Syl. Pt. 1, in part, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).  However, this Court is not a factfinding tribunal, and we cannot infer that findings as to the four children in guardianships could have been properly made in this case; the record does not afford sufficient facts from which to draw any such inference.  For that reason we must vacate, in part, the circuit court's adjudicatory and dispositional orders with regard to the four children—B.V., W.V.-1, L.V., and E.O.-R.— in legal guardianships at the time the underlying abuse and neglect petition was filed.  We remand this matter to the circuit court for further proceedings, including but not limited to an order setting out the requisite findings as to whether any of the four children in legal

---

[11] The other two children in guardianships, L.R. and E.O.-R. were each mentioned only once in the underlying proceedings; in the GAL's report it was noted that those children had little to no contact with the parents.  It is impossible for this Court to determine whether those children were exposed to any abusive or neglectful conduct at the hands of the parents that would justify a finding they were abused or neglected children.

14

guardianships met the statutory definitions of an abused or neglected child, based on the evidence previously adduced. *See* W. Va. Code § 49-1-201. To the extent that evidence does not support such a determination, we further direct the circuit court to undertake such proceedings, consistent with this opinion, as may be necessary to ascertain whether the children in legal guardianships met the statutory definitions of an abused or neglected child, so that the circuit court might properly exercise jurisdiction.

**B.      Termination**

Having determined that the portion of the dispositional order dealing with the children in guardianships must be vacated, we now turn to that portion of the dispositional order dealing with the children—N.R., E.R., and S.V.—residing with Petitioners. We begin with Petitioner Mother, who contends that the record includes "uncontroverted evidence" that she took steps to protect the children from Petitioner Father's abusive conduct; to wit: in their forensic interviews B.V. and N.R. recounted instances in which she locked Petitioner Father out of the home and where she packed bags for herself and the children with the intention of leaving the home. Although this evidence was undoubtedly before the circuit court, the court found it to be insufficient to rebut the evidence that she failed to protect the children.

This Court has explained that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995).

The circuit court's finding that Petitioner Mother failed to protect the children is amply supported by the evidence of record. While she may have occasionally taken steps to leave the home, the record is clear that those steps were minimal, were never successful, and that she continued her relationship with Petitioner Father throughout the proceedings. In addition, the court had before it significant evidence that Petitioner Mother was present or in the next room when Petitioner Father was abusing E.R. and failed to intervene. Thus, even with evidence of Petitioner Mother's limited attempts to protect them, the circuit court was wholly justified in finding she failed to protect the children.

Next, Petitioner Mother contends the circuit court erred in finding that the DHHR was relieved of its duty to make reasonable efforts to preserve the family in this matter. While it is true that the DHHR generally must make such reasonable efforts, West Virginia Code § 49-4-604(c)(7)(A) (2020) relieves it of that duty where the circuit court makes a finding that the parent "has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse, and sexual abuse[.]" In the instant case, Petitioner Mother readily concedes that Petitioner Father engaged in chronic abuse of E.R., and the circuit court made an explicit finding to that effect. It is clear from the circuit court's order that this finding applied to *both* parents; Petitioner Mother was aware of the chronic abuse and did nothing to prevent it. *See, e.g.*, *In re A.L.C.M.*, 239 W. Va. 382, 392, 801 S.E.2d 260, 270 (2017) ("Thus, for a child to be determined to be an 'abused child,' the parent charged with such

16

abuse need not commit the abuse him/herself, so long as he/she knew that the subject abuse was being perpetrated, even if the alleged abuse occurs outside of the presence of the parent charged with such abuse.") (citation omitted). The DHHR was properly relieved of its duty to preserve the family in this instance.

Even assuming such a finding had not been made, Petitioner Mother fails to rebut the wealth of evidence in the record illustrating that the DHHR *attempted* to provide services to the parents in the form of supervised visits, parenting classes, and drug screens. The parents rendered those efforts futile by being uncooperative with the DHHR, failing to provide contact information, and relocating in the middle of the proceedings without informing the DHHR of their new address. Further, the parents abjectly failed to acknowledge the conditions of abuse or neglect; that fact alone renders those problems untreatable and any services the DHHR may have provided an exercise in futility. *In re Timber M.*, 231 W. Va. 44, 56, 743 S.E.2d 352, 364 (2013). Accordingly, we find no error in the circuit court relieving the DHHR of its duty to preserve the family.

We turn now to Petitioner Father, who first contends the circuit court erred in terminating his parental rights, or more specifically that termination was unnecessary to protect their welfare. We find this argument to be without merit. The circuit court's dispositional order thoroughly explains that Petitioner Father subjected E.R. to extensive physical abuse and engaged in domestic violence against Petitioner Mother in the presence of the children. Moreover, the record is replete with evidence suggesting Petitioner

17

Father's abusive conduct was pervasive that he continuously exposed the children to his egregious behavior, perhaps including those children residing outside of the home. Finally, as noted above, the record makes clear that throughout the proceedings Petitioner Father failed to acknowledge any responsibility for this abusive behavior. In light of this record there is scant merit to the argument that it was unnecessary to terminate his parental rights in order to protect the children's welfare.

In the same vein, Petitioner Father argues the circuit court erred in finding that he failed to acknowledge his abusive conduct because pending criminal charges "prevented [him] from testifying or acknowledging the alleged abuse." As a preliminary matter, Petitioner Father fails to cite to any authority supporting this proposition. No such precedent exists; this Court's precedents lead to the exact opposite conclusion. More specifically, we have previously considered whether a circuit court may consider a parent's silence in an abuse and neglect proceeding when a parallel criminal proceeding is pending. We explained that "[t]here is no basis in law for requiring that a court be disallowed from considering a parent's or guardian's choice to remain silent as evidence of civil culpability." *W. Va. Dept. of Health and Hum. Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 497, 475 S.E.2d 865, 873 (1996). Instead, we held that

> [b]ecause the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

18

*Id.* at 492, 475 S.E.2d at 868, syl. pt. 2.

In reaching this conclusion, we explained that a parent or guardian's rights in the criminal proceedings are sufficiently protected such that they may still acknowledge responsibility in the civil abuse and neglect proceeding. We stated:

> Such a parent or guardian may be invoking his/her right to remain silent pursuant to the Fifth Amendment because that individual also may be facing criminal charges arising out of the abuse and neglect of the child. The rights of the criminally accused are sufficiently protected, however, by the following statutory provisions: 1) West Virginia Code § [49-4-603(a)(5) (2018)] which allows medical and mental examinations of the child or other parties involved in an abuse and neglect proceeding provides that "[n]o evidence acquired a result of an[] [] examination of the parent or any other person having custody of the child may be used against [the] person in any subsequent criminal proceedings against [the] person"; 2) West Virginia Code § [49-5-101(a) (2022)] . . . and 3) West Virginia Code § 57-2-3 (1966) provides that "[i]n a criminal prosecution other than for perjury or false swearing, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination."

*Id.* at 497 n.22, 475 S.E.2d at 873 n.22. In short, the laws of this state already account for the possibility that civil abuse and neglect proceedings may run parallel to criminal proceedings, and afford protection to the criminally accused should that be the case. Thus, in light of established law, there was nothing preventing Petitioner Father from acknowledging his abusive conduct in the instant abuse and neglect proceedings. Therefore, the circuit court was well within its authority to take his failure to do so into account in determining whether to terminate his parental rights.

19

For the reasons stated, we affirm the termination of the parents' parental, custodial, and guardianship rights to N.R., E.R., and S.V., the children who resided in the home. We vacate in part the dispositional and adjudicatory orders of the circuit court as to B.V., W.V.-1, L.V., and E.O.-R., the children in legal guardianships at the time the abuse and neglect petition was filed, and remand for further proceedings consistent with this opinion.

## IV. CONCLUSION

Based on the foregoing, we affirm, in part, and vacate, in part, the Circuit Court of McDowell County's February 14, 2022, dispositional order, and November 24, 2021, adjudicatory order. We remand this matter for further proceedings with regard to the children placed in legal guardianships, consistent with this opinion.

Affirmed, in part, vacated, in part,
and remanded with instructions.